[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff, Brian Dell, brings this action claiming that he is entitled to compensation for engineering consulting services he rendered to the defendant, Electro-lite Corporation, in the design of an ultraviolet light curing device known as the "ELC-800."
At trial, the President of the defendant, Electro-lite Corporation, Joshua Friedman, testified and admitted that the plaintiff, Dell, is entitled to some compensation for services that he rendered to Electro-lite in connection with the ELC-800 project. The Plaintiff claims that he should be paid $17,050.00 for the reasonable value of the services he rendered under the principle of quantum meruit. The defendant claims that the Plaintiff should be paid in accordance with the terms of the ELC-800 royalty agreement that provided for payment at the rate of $35.00 per ELC-800 unit sold.
The simple question before the court then is what damages should be awarded to the plaintiff.
The court finds the following facts:
1. For some time prior to August 1995, the defendant, Electrolite Corporation, was engaged in the development of the ELC-800, an ultraviolet light curing device.
2. The ELC-800 had been in development for several years prior to August 1995 and Joshua Friedman, President of Electro-lite Corporation, was concerned that development of the ELC-800 was becoming too costly and was moving too slowly. Friedman was further concerned that the ELC-800 might be obsolete prior to coming to the market.
3. In or about August of 1995, Friedman, President and principle owner of the defendant, Electro-Lite Corporation, entered into discussions with the Plaintiff, Dell, with whom Friedman had a prior long-standing business relationship, to provide engineering consulting services for the ELC-800 project. CT Page 15933
4. In August of 1995, Friedman and Dell, without the benefit of legal counsel, entered into a "royalty" agreement under which Electro-lite Corporation and Dell would share the risks, and the potential rewards, from the development and marketing of the ELC-800.
5. The royalty agreement was not reduced to writing until November 21, 1995 when Friedman and Dell, again without the benefit of legal counsel, executed a simple, one page written contract memorializing the agreement entered into between the parties in August of 1995. (Plaintiffs Trial Exhibit #1)
6. The royalty agreement provided that "I (Dell) will render technical support, in a timely manner, as required . . ."
7. In the months that followed execution of the royalty agreement, Dell spent a considerable amount of time working on projects other than the Electro-lite ELC-800 project. Specifically, Dell was engaged in a steel mill reconstruction project in Canada. His work on the steel mill reconstruction project consumed a considerable amount of Dell's time and required Dell to spend a significant amount of time in Canada.
8. After several months, Friedman became unhappy that he and other Electro-lite representatives were having difficulty in reaching Dell to discuss and move the ELC-800 project forward.
9. The royalty agreement (Exhibit #1) provided that the agreement could be canceled by either party for "reasonable cause" upon ninety days written notice.
10. On October 31, 1996, Electro-lite exercised its prerogative to cancel the agreement for such "reasonable cause" and sent a letter to Dell advising him of the cancellation of the agreement. (Plaintiffs Trial Exhibit #2)
11. "Reasonable cause" for cancellation of the agreement was Dell's relative unavailability in the months following execution of the royalty agreement and his further failure to provide the necessary technical support in a timely manner as required by the royalty agreement.
12. In the October 31, 1996 cancellation letter from Electro-lite to Dell, Friedman indicated that Electro-lite would compensate Dell in accordance with the terms of the royalty agreement "less those expenses pertaining to ELC-800 consulting services that were made necessary due to your absence." CT Page 15934
13. The defendant, Electro-lite, has offered no evidence as to any additional expenses it incurred ". . . pertaining to ELC-800 consulting services that were made necessary due to your (Dell's) absence."
It is clear from the Court's consideration of the evidence presented that this case involves two hard-working, talented and honorable men, who, in good faith entered into a business agreement that failed to yield the results that both had hoped for.
There can be no doubt that the intention of the parties was to enter into an agreement under which both parties would share the risk and both parties would share in the rewards of a successful business venture. To enhance the prospects of sharing in the rewards of the venture there was a great incentive for Dell to timely provide the requisite engineering, design and development services to assure the market viability of the ELC-800. The record discloses and the court finds that Dell failed to do so.
It was therefore not unreasonable for Electro-lite to terminate the royalty agreement. Even in doing so, Electro-lite assured Dell that it would compensate him in accordance with the terms of the canceled agreement.
Dell though now argues that he should not be compensated in accordance with the terms of the agreement but that he should be compensated for the reasonable value of the services he rendered under the principle ofquantum meruit. For the court to accept such a theory under the circumstances presented here would be to reward Dell for failing to comply with the terms of the agreement. Surely Dell should not profit more from failing to timely provide the engineering, design and development services that were required to enhance the market viability of the ELC-800. His profit should flow from good faith compliance with the terms of the agreement and the successful development and marketing of the ELC-800.
The agreement between the parties was to share in both the risks and the rewards of the ELC-800 project. Electro-lite has made no profit in connection with the ELC-800 project. Friedman testified and the court finds that Electro-lite lost approximately $200,000.00 on the ELC-800 project. Unfortunately, the risks of the project were many and the rewards were few. That is the gamble that was assumed by both parties when they entered into the royalty agreement.
Friedman testified and the court finds that 100 ELC-800 units were sold, delivered, paid for and not returned by customers of Electro-lite. Fair compensation for Dell under the terms of the royalty agreement is CT Page 15935 $3,500.00 computed at the rate of $35.00 per unit sold.
Judgment may accordingly enter in favor of the Plaintiff in the amount of $3,500.00 plus costs.
BY THE COURT
CARROLL, Judge.